## KLOTZ et al. v. IMPERIAL PERFUMERY & BARBER SUPPLIES, Inc.

### (District Court, S. D. New York. April 10, 1924.)

1. **Trade-marks and trade-names and unfair competition ⬡⟳95(3)—Limitation of dress held to entitle complainants to preliminary injunction.**

   Marketing by defendant of a hair tonic known as "Eau de quinine" in a dress, consisting in combination of the bottle, stopper, color of content, labels, and arrangement of labels so similar in general appearance to that used by complainants and their predecessors for nearly 100 years, and which was distinctive of their product, as to be calculated to deceive consumers, *held* to entitle complainants to a preliminary injunction.

2. **Trade-marks and trade-names and unfair competition ⬡⟳70(4)—Combination in dress may be entitled to protection.**

   Though a complainant may not be entitled to the exclusive use of any one of the characteristic features of the dress of his product considered separately, he may be entitled to protection against their use by a competitor in combination, where no valid reason for the simulation is shown.

In Equity. Suit by Henry Klotz and George Klotz, partners trading as H. & G. Klotz, against the Imperial Perfumery & Barber Supplies, Inc. On motion for preliminary injunction. Granted.

Putney, Twombly & Putney, of New York City (Louis H. Hall, of New York City, of counsel), for plaintiffs.

Walsh, Baird & Smith, of Yonkers (Harry D. Nims and Minturn De S. Verdi, both of New York City, of counsel), for defendant.

WINSLOW, District Judge. This is a motion for an injunction pendente lite. The action is brought to restrain the alleged unfair competition of the defendant, through the simulation by the defendant of the characteristics and marks and dress of a package containing the product marketed by the plaintiffs, known as Ed. Pinaud's Eau de Quinine.

[1] In or about the year 1840, one Edouard Pinaud began the preparation and sale of an article known as "Eau de Quinine," which he marketed in bottles of a distinctive size and shape and bearing labels of a distinctive appearance, all of which appear on the plaintiffs' exhibit before the court. The color and contents of the bottle have always been the same, except that a change was made for goods marketed in the United States from the French language to English. The labels and dress and general appearance of the bottle package have always been the same. Certain of the marks, to wit, the name "Ed. Pinaud" and the phrase "A la Corbeille Fleurie," and the design of a basket of flowers on the label, are the technical registered trade-marks of plaintiffs. The plaintiffs have succeeded to the business, property, trademarks, good will, and property rights connected therewith of Pinaud.

The plaintiffs claim that the entire dress of the package, consisting of bottle, color of content, labels, and arrangement of labels, are the property of the plaintiffs through long-continued use. This claim of the plaintiffs is supported by persons associated with the plaintiffs and also by numerous affidavits of disinterested persons, including com-

petitors of plaintiffs. It is not disputed that the plaintiffs have adopted and have had in use for many years the various features and combination which go to make up the dress of the plaintiffs' product. The product of the defendant is contained in a bottle practically identical in appearance as to shape and size. The liquid contents are of the same color in both. The neck label of both bottles is a dull red, with white lettering. The labels on both are approximately of the same size and shape, except that defendant's label has rounded corners, while the corners of plaintiffs' label are beveled. On plaintiffs' label appears a basket of flowers. On defendant's label is a wreath of flowers. Above the wreath on defendant's label appear the words "Hygiene de la Tête." Below the basket of flowers on plaintiffs' label appear the words "Hygiene of the Scalp." The most prominent words on both labels are "Eau de Quinine."

The defendant, in substance, contends that the plaintiffs have no such characteristic dress of package which would entitle them to an injunction; that, on the other hand, all of the features employed by the plaintiffs are common to the trade, and that therefore defendant is free to use them. Defendant further contends that the plaintiffs, in substance, had knowledge of the acts of the defendant in marketing their package, and have in effect acquiesced therein, and therefore are estopped now from attempting to prevent defendant from using the marks and labels on its product.

[2] At the outset, it may be conceded that the right to use the words "Eau de Quinine" is not exclusive to the plaintiffs. The term is descriptive, and for the purposes of this motion it will be assumed that these words could not by themselves be appropriated as a trade-mark. Neither is it necessary to determine on this motion, as a condition precedent for granting a preliminary injunction, that the plaintiffs have any exclusive right to the size and shape of the bottle, or of the label alone, or the color of the liquid content, or the metal stopper, or, indeed, any other single feature of the package. Indeed, for the sake of argument, we may assume that the characteristic features separately are not susceptible of appropriation by plaintiffs. The sole question for the court to determine is whether all of these features in combination, and thus used by the plaintiffs for many years, are such as to entitle them to injunctive relief pending the trial of the action.

If the defendant has simulated the plaintiffs' package, by combining all of the various items of dress, metallic stopper, labels, the descriptive features of the labels, color, and appearance, so that the court can reasonably conclude that the casual purchaser will be deceived and misled, and mistake the defendant's package for the plaintiffs', then the plaintiffs may be entitled to the relief they seek, even though it be admitted that dealers will not be deceived. The voluminous affidavits are enlightening, but the opinions of dealers as to the simulation of plaintiffs' package by the defendant cannot be substituted for the opinion of the court. There are a number of minor differences between the forms and dress of the two packages, but no one can look at both packages without perceiving that the resemblance is marked. It would require very slight ingenuity on the part of the defendant, if it honestly

desired to give its product a distinctive dress, to do so. As was well said by Judge Lacombe in National Biscuit Co. v. Baker, 95 Fed. 135:

"Both name and dress are clearly calculated to mislead, and the statements that both were adopted with an eye single to differentiation strain the credulity of the court beyond the breaking point."

It may well be that persons in the trade would not be deceived, but it is the probable effect upon the consumer that the court will consider. The general impression made by the defendant's package upon the eye of a casual purchaser is likely to result in his conclusion that it is the original article marketed for many years by the plaintiffs and their predecessors. The court agrees with the contention that one may be entirely free to use the exact color of the liquid content, or even other features, including the shape of the label, the shape and size of the bottle, neck, and stopper; but the conclusion is irresistible that, if he uses these things in the special combination used by the plaintiff, and which use by the plaintiff has made his product distinctive, it is from a dishonest motive that defendant has simulated plaintiffs' product.

It further appears, and the court is satisfied from the record, that the characteristics of plaintiffs' package and their combination originated with the plaintiffs, or their predecessors, and were not adopted by them from characteristics in common use. It is no argument on behalf of the defendant that many others have imitated the plaintiffs' product, inasmuch as that contention is not shown to be supported by further proof of acquiescence by the plaintiffs in such simulation of their product by others. The defendant in this connection, however, contends that it, or its predecessors, informed the plaintiffs of its intention to use the main label now used on defendant's product prior to such use, and that the plaintiffs, by agreement, consented to such use.

The court is not convinced that that is the fact, although that contention by the defendant merits consideration. It appears that a predecessor in business of the defendant had a controversy with these plaintiffs with regard to an alleged imitation then being marketed by such predecessor, and that such controversy was adjusted by some change of label and such alleged imitation was discontinued. Such adjustment apparently was made by a proposed label being submitted to the plaintiffs herein as an inducement to the plaintiffs to desist from prosecution. The most that can be deduced from the voluminous affidavits and copies of labels is that an agreement was made some time in 1913 that this predecessor of defendant agreed to refrain from continuing the use of a label then in use.

The motion for a preliminary injunction will be granted. The amount of bond to be furnished by the plaintiffs will be fixed on the settlement of the order herein.